This suit arises from a collision which occurred at approximately 5:20 o'clock in the afternoon of September 6, 1940, between plaintiff's Pontiac Sedan automobile and defendant Allan's Dodge Coupe, at the intersection of Morning Glory Avenue and Cedardale Avenue, in a suburb of the City of Baton Rouge.
The plaintiff alleges that he was driving eastward on Morning Glory Avenue, which he contends was a through street running east and west, and that defendant Allan was driving his automobile northward along Cedardale Avenue, which he contends was a stop street or cross street running north *Page 616 
and south. Plaintiff contends further that the accident was caused entirely by the negligence of the defendant Allan in (a) operating his Dodge coupe at an excessive and dangerous rate of speed, (b) failing to keep a proper lookout, (c) disregarding the stop sign on Cedardale Avenue, (d) in failing to slow down at the intersection of Cedardale and Morning Glory Avenues. Plaintiff alleges that as a result of the collision his automobile was damaged to the extent of $266.54, which is admitted by stipulation, of which amount $216.54 was paid to plaintiff by the Great American Insurance Company, his insurer, which thereupon became subrogated to his rights for such amount, and plaintiff prays for judgment in the amount of $50 for himself, and $216.54 for his subrogee, against the defendant Allan and defendant's insurer, in solido.
The defendants admit that the collision occurred at the time and place alleged, but they deny any negligence on the part of the defendant Allan and plead that the accident was caused entirely by the gross negligence of the plaintiff. They allege that the respondent, upon arriving at the intersection, came to a complete stop and looked both ways on Morning Glory Avenue and seeing nothing within the range of his vision too near the intersection to permit him to cross in safety, he shifted his Dodge coupe into first gear and started across Morning Glory Avenue, and that while going slowly in first gear across the intersection and after it had reached approximately the center thereof, plaintiff's Pontiac automobile, being operated at a grossly excessive rate of speed of between 35 and 50 miles per hour, crashed into respondent's Dodge coupe.
In the alternative, in the event that respondent be found guilty of any negligence, defendant pleads that plaintiff Asbury was guilty of contributory negligence for the reasons: (a) that he was driving at an excessive and dangerous and reckless rate of speed, (b) that he was not keeping a proper lookout, (c) that he did not have his Pontiac automobile under such control as to avoid striking automobiles which were lawfully crossing an intersection, (d) that the Dodge coupe had preempted the intersection and plaintiff Asbury was guilty of negligence in failing to respect the superior right of way thus acquired by the Dodge coupe, (e) that plaintiff Asbury was guilty of negligence in that he failed to see, or saw and failed to heed, the Dodge coupe properly crossing the intersection, and (f) that plaintiff Asbury did not look to his right when entering the intersection.
Assuming the position of plaintiff in reconvention, the defendant Allan pleaded that the accident was caused entirely by plaintiff Asbury's negligence as set forth above, and in the alternative alleged in effect that plaintiff should be liable for the collision, for the reason that he had the last clear chance of avoiding the collision either by slowing the speed of his car or by turning it slightly to his right. Defendant alleges that his Dodge coupe was damaged to the extent of $114.53, which damage was admitted by stipulation.
The case was regularly tried before Honorable Robert S. Ellis, acting as Judge during the illness of Judge Womack. Judge Ellis rendered judgment dismissing plaintiff's demand and defendant's reconventional demand, taxing the costs to the plaintiff. The plaintiff has appealed, praying that his demand be granted, and the defendant Allan has answered the appeal asking that plaintiff's demand be dismissed and that the reconventional demand be allowed.
The trial judge did not submit a written opinion in support of his judgment, but it is apparent that he found as a matter of fact that both plaintiff and defendant Allan were guilty of negligence proximately causing the collision, and, of course, unless we can find manifest error in such conclusion of fact, we must affirm the judgment.
The testimony consists of the testimony of the plaintiff and defendant Allan and of Warren Berwick, the insurance investigator for plaintiff's insurer, and Manuel Mackey, operator of the wrecker which hauled defendant's Dodge to the repair shop, and also the itemized statements of the garage which repaired plaintiff's car and the garage which repaired defendant's car, showing the various parts replaced or repaired.
Mr. Asbury, the plaintiff, testifies that he was driving east on Morning Glory Avenue at a speed of 25 to 30 miles an hour as he neared the intersection of Morning Glory Avenue with Cedardale Avenue. He slowed down to a speed of 20 to 25 miles an hour because of the blind corner at the southwest side of the intersection. *Page 617 
He states that he did not look to his right down Cedardale Avenue until the front of his car was about 3 to 4 feet within the intersection and that the collision occurred when the front of his car was about one to three feet to the east of the center line of Cedardale Avenue. He states that both avenues had a pavement of about 18 feet width and that Morning Glory Avenue was an artery of traffic, and Cedardale Avenue was not. (We surmise meaning "through street" by the term "artery of traffic"). He states that he just got a glimpse of defendant's car right before the collision, and estimates the speed of defendant's car to have been 15 or 20 miles an hour and that the defendant car crashed into the right rear fender of his Pontiac, to which he had applied his brakes and which he had turned to the left, and that the Pontiac thereupon veered into the northeast corner of the intersection and crashed into the embankment, damaging the grill and bumper and pushing back slightly the right front fender, and that defendant's car swerved eastward into Morning Glory Avenue and came to rest about 30 feet east of the Pontiac, parallel to the northeast curb of Morning Glory Avenue.
The defendant's testimony is almost directly opposite to that of plaintiff. He states that when he arrived at the intersection of Cedardale Avenue and Morning Glory Avenue, travelling northward at about 25 miles an hour, he came to a complete stop within 5 feet from the entrance to the intersection, where he could see clearly both east and west on Morning Glory Avenue. He estimates the distance he could see to his left (west) on Morning Glory Avenue at about 200 feet and 300 feet to the east, and seeing no car in either direction, he put his car in first gear and started to cross, but that just as he crossed the middle of the intersection something attracted his attention, and the next thing he knew, Mr. Asbury's car hit his car on the left fender just near to the door, and completely turned him around to the right and his Dodge coupe travelled, still in first gear, approximately ten paces to the north side of Morning Glory Avenue about 30 to 40 feet from the intersection and that the Pontiac crashed into a telephone pole or electric line pole, on the northeast corner of the intersection.
Mr. Warren Berwick testified with reference to a series of photographs which he took and with reference to two charts made by him of the accident, at the scene of the accident. The photographs show the intersecting avenues and show also the position of the two cars after the collision. It is clearly shown by these photographs that the southwest corner of the intersection is a blind corner, as testified by plaintiff. Defendant testified that there were weeds growing on this corner to a height of four feet, and yet he maintains that he could see over these weeds from his car in Cedardale Avenue, but he obviously is mistaken, because it is clearly shown that, in addition to weeds of four feet height, that the embankment whereon they grew was about two feet in height above the street level. The photographs show definite marks on both the rear right fender of plaintiff's car and the right front fender, and the itemized statement also indicates replacements of both front fenders on the plaintiff's car. The photographs did not show clearly the damage to defendant's car, but his itemized statement shows replacement of one used fender, without indicating which fender was replaced.
Manuel Mackey testified that when he started to pull defendant's Dodge coupe he discovered that it was in first gear. It does not appear that anyone got into defendant's car between the time that defendant got out of it and Mackey started to haul it away, so that Mackey's testimony corroborates defendant's statement to the effect that he had placed his car in first gear before the collision.
From a review of this evidence it is difficult to reconcile the testimony of the parties litigant, even from a consideration of the physical facts. From the physical facts, however, it does appear that defendant's contention that plaintiff ran into him is more plausible than plaintiff's contention that defendant ran into him, as set forth. If defendant had struck plaintiff's car on the right rear fender, travelling 15 or 20 miles an hour, while plaintiff had his car turned to the left, it would appear that plaintiff's car would have been swerved towards the southeast corner of the intersection instead of the northeast corner, where it came to rest. The mark on the rear right fender could have occurred after plaintiff hit defendant on defendant's left front fender, thereby swerving the rear part of defendant's car towards plaintiff's right rear fender. In any event, it is admitted by both plaintiff and defendant that they entered the blind intersection *Page 618 
without blowing their horns and apparently without much regard for on-coming traffic, and even that constitutes negligence on the part of each, amounting to a proximate cause of the accident, and, of course, barring recovery by either.
Finding no manifest error, the judgment is affirmed.